**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**


**BARBARA ANN KELLY,**

　　　　　**Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　**Case No. 3:10cv392-MW/EMT**

**ROBERT DAVIS, SEASIDE
COMMUNITY DEVELOPMENT
CORP., SEASIDE COMMUNITY
REALTY, INC., SEASIDE I
HOMEOWNERS ASSOCATION,
INC., & TOWN COUNCIL, INC.,**

　　　　　**Defendants.**

_____/

## <u>RECUSAL ORDER</u>

　　　Plaintiff Barbara Ann Kelly moves for my disqualification as presiding

district judge under 28 U.S.C. § 455(a) and (b)(5)(iii).  ECF No. 323.  The motion

is untimely given that it comes more than two years after Plaintiff learned of the

asserted grounds and did not bring them to the attention of this Court until after

unfavorable rulings.  It is also without merit in fact or law.  For the reasons that

follow, the motion is denied.  For reasons not suggested by Plaintiff, I choose to

voluntarily recuse myself from this case; namely, Plaintiff's unfounded attacks on

my wife's character in the motion for disqualification.

I

On February 16, 2012, the President nominated me to serve as a district judge on this Court.  The Senate confirmed my nomination on December 6, 2012.  I received my commission the next day.

On December 21, 2012, an administrative order reassigned me to preside over almost 200 already pending cases.  ECF No. 133.  This case was among them.  In brief, Ms. Kelly brought a number of claims related to her purchase of a property in the Seaside, Florida, community.  I refer to the property as Lot 13.  I refer to this case, 3:10cv392, as the "*Seaside* federal case."

The same administrative order assigned me to preside over another case with the same plaintiff along with her husband, *Barbara Ann Kelly & Gregory Brian Myers v. Regions Bank*, 3:11cv252 (N.D. Fla.) ("*Regions* federal case").

On December 23, 2012, I left for a preplanned trip out of the country.  I returned to the office on January 3, 2013, and immediately began reviewing the cases to which I had been assigned.  When reviewing the hundreds of cases assigned to me for potential conflicts, I learned that lawyers from the firm Holland & Knight were representing Regions Bank in the *Regions* federal case.  Though she had not entered an appearance in that case, my wife Karen Walker is the senior partner in charge of the Tallahassee, Florida, office of Holland & Knight.  So the first and only order I issued in the *Regions* federal case was to disqualify myself.  I

explained at the time that I was doing so because my "spouse is a partner with Holland & Knight, LLP."  Case No. 3:11-cv-252, ECF No. 134 (Jan. 4. 2013).  I did so within forty-eight hours of discovering the conflict.

Because I immediately disqualified myself from the *Regions* federal case, I did not review its substance.  At a glance, it concerns claims by Ms. Kelly and Mr. Myers against Regions Bank relating to a loan modification on a different property in Seaside, referred to here as Lot 6.

For more than two years, I presided over this case with no objection from any party.  It had an extensive set of summary-judgment motions.  For the most part, Defendants won and Plaintiff lost.  Specifically, on July 17, 2014, I denied Plaintiff's motion for partial summary judgment against Defendant Seaside I Homeowners' Association.  ECF No. 279.  I also granted summary judgment in favor of Defendants Town Council, Inc., and Seaside I Homeowners' Association as to Counts VII and VIII.  ECF No. 278.  On August 26, 2014, I denied Plaintiff's partial summary judgment motion against Defendant Seaside Community Development Corporation (SCDC).  ECF No. 294.  On January 14, 2015, I granted the remaining Defendants' summary judgment motion on all counts except certain parts of the declaratory-judgment claim, Count IX.  ECF No. 308.  I have ordered further briefing those claims for declaratory relief, which are still pending.

II

Plaintiff has now moved for disqualification.  ECF No. 323.  Apart from what I have already described, she asserts the following grounds.

On July 29, 2010, Regions Bank filed a complaint in state court styled *Regions Bank v. Gregory Brian Myers, Barbara Ann Kelly, Seaside III Neighborhood Association, Inc.*, Case No. 10-CA-001162 ("*Regions* state case"). ECF No. 323, at 3.  Although the record of that case is not before this Court, Defendants say that Regions Bank sought foreclosure on Lot 6.  ECF No. 324.  On October 7, 2010, Ms. Kelly filed her complaint in the *Seaside* federal case.  On May 24, 2011, Ms. Kelly and Mr. Myers filed their complaint in the *Regions* federal case.

During a June 6, 2012, deposition in the *Seaside* federal case, Defendants' attorneys asked Mr. Myers about Lot 6, which he and Ms. Kelly jointly own. Defendants' attorneys also asked Mr. Myers about Lot 3 in the Watercolor community.  According to the transcript, Mr. Myers stated that "Regents Bank" held mortgages on those properties and sought foreclosure.  ECF No. 217-2, at 10. Amidst lengthy errata, Mr. Myers says this is a spelling error; that it should say "Regions."  ECF No. 217-2, at 69.

In reproducing the question-and-answer in her motion, Ms. Kelly switched out the word "Regents" in two places and inserted "Regions."   ECF No. 323, at 4. The actual transcript reads thus:

> Q: Lot 6, Seaside 14, that is a lot in Seaside?
> A: Correct.
> Q: And how is that titled?
> A: As stated, Tenants by the Entirety.
> Q: All right. And is there still mortgage in favor of Regent's Bank?
> A: There's a mortgage secured on that lot. Regents Bank is the lender.

ECF No. 217-2, at 10.  Ms. Kelly's motion says this:

> Q: Lot 6, Seaside 14, that is a lot in Seaside?
> A: Correct.
> Q: And how is that titled?
> A: As stated, Tenants by the Entirety.
> Q: All right. And is there still mortgage in favor of Regions's [sic] Bank?
> A: There's a mortgage secured on that lot. Regions Bank is the lender.
> Q: And that is in foreclosure?
> A: Yes.

*Id*.  The term s*ic* is properly used "following a word misspelled or wrongly used in the original." *Chicago Manual of Style* § 13.59.  So it would have been proper to reproduce the text as "Regent's [*sic*] Bank."  If there is to be a substitution for the corrected word, that must be indicated by brackets. *See id*. § 13.58.  That is, it would have been proper to reproduce it as "[Region's] Bank."

Defendants submitted portions of this deposition in support of their summary-judgment motion.  So far as I can tell from the record, Regions Bank has

no interest in the property at issue in this case, Lot 13.  Ms. Kelly does not suggest

otherwise in her motion.

On August 29, 2012, Defendant SCDC moved in the *Seaside* federal case to

compel Ms. Kelly to produce tax returns for 2004 and 2009.  ECF No. 173.  The

motion referenced the *Regions* federal case.  *Id*.  On September 19, 2012, the

assigned magistrate judge granted the motion to compel, concluding that the tax

returns were relevant to Plaintiff's claims and SCDC's defense that Plaintiff did

not have financial resources to complete construction of a house on Lot 13.  ECF

No. 183.  In so doing, the magistrate judge mentioned in a footnote that Ms. Kelly

had brought predatory lending claims in the *Regions* federal case, and noted it

concerned Lot 6.  *Id*. at 2 n.1.

On November 13, 2012, a lawyer at Holland & Knight sent an email to

Plaintiffs' attorney in the *Regions* federal case.  Ms. Kelly offers what appears to

be a redacted version of the email.  The Holland & Knight lawyer says this:

> Please advise by Wednesday whether you intend to meet that
> obligation by the end of the week.  If not, we will move to strike the
> supplemental Myers Declaration, identify for the Court . . . the
> discovery abuses in our motion, and advise defense counsel in the
> other action of Myers' tactics.

ECF No. 323-3 at 2.  According to Plaintiff, the "other action" referenced is

the *Seaside* federal case.  ECF No. 323, at 5.

6

In the *Regions* federal case, Regions Bank moved for summary judgment on

October 18, 2012.  No. 3:11cv252, ECF No. 106.  In support, Regions Bank

attached excerpts of Mr. Myers's deposition testimony in which he discussed Lot

13.  This is the full exchange:

> Q Talking about Lot 13 that your wife purchased shortly after the Lot 6, there's litigation involving that case; correct?
>
> A Correct.
>
> Q And without getting into too many details, can you just generally give us in one or two sentences, the nature of that lawsuit?
>
> A I think I already summarized that for you. You asked me about that earlier.
>
> Q Well, I'm asking it now. What is the nature of the lawsuit regarding Lot 13?
>
> A Breach of contract.
>
> Q And your wife has accused the developers of Seaside of being engaged in a criminal scheme; is that correct?
>
> A I can't answer that. You'd have to ask her attorney.
>
> Q You've not seen the letter or helped your wife prepare a letter to a Doris Goldstein that references a criminal scheme?
>
> A It's a crime in the state of Florida to sell lots that are not properly platted. Seaside Community Development Corporation, Robert Davis, Seaside Community Realty and others, in my opinion, were fully aware that those lots were not properly platted and they are not properly platted. And Walton County has indicated they are not properly platted. And that is a crime in the state of Florida to sell lots that are not properly platted. So to the extent it is a crime and they acted together, you could characterize that as a criminal scheme.

Case No. 3:11cv252, ECF No. 107-2, at 23.

On December 14, 2012, several Defendants in the *Seaside* federal case moved for summary judgment.  ECF No. 216.  In footnote 2 of the accompanying statement of facts, those Defendants cited Mr. Myers's deposition and also material from the *Regions* federal case, as follows:

> While it appears clear from her testimony Ms. Kelly testified she was a homemaker, Defendants have learned of evidence subsequent to her deposition of October 6, 2011[,] suggesting that Ms. Kelly owned a mortgage brokering firm called MetFund and employed her husband at that firm from 1995 to 2007.  Ms. Kelly is the president of this corporation.  (See Deposition of Greg Myers, Volume 4, 853:20 to 853:24.  See also, generally, *Barbara Ann Kelly and Gregory Myers v. Regions Bank*, Case No. [3]:11cv252-MCR/EMT, Doc. 107, Regions Bank Statement of Undisputed Facts.)

ECF No. 217, at 2 n.2.  Ms. Kelly says that "[i]t is apparent that Regions Bank Statement of Undisputed Facts was injected surreptitiously into the Seaside Federal Case in an effort to prejudice Ms. Kelly in the eyes of Ms. Walker's spouse, Judge Walker."  ECF No. 323, at 7 (footnote omitted).

Unless Defendants are clairvoyant, that is obviously false.  The administrative order assigning me to both cases was not entered until a week later.  *See* ECF No. 224 (dated December 21, 2012).  Plaintiff's lawyer ought to more carefully consider the facts arranged chronologically in his own motion before suggesting that opposing counsel had such a motive.

All of this occurred, of course, before these cases were assigned to me on December 21, 2012.  Before I returned to the office on January 3, 2013, on January 2, 2013, Ms. Kelly and Mr. Myers were apparently considering a motion for my recusal from the *Regions* federal case.  A lawyer at Holland & Knight sent an email to Plaintiff's attorney stating "If you can wait until Monday, [a lawyer in the Tallahassee office of Holland & Knight] can check with Karen Walker to see if there is a set procedure." ECF No. 323-5, at 2.  Ms. Kelly says that "it may be reasonably inferred . . . that Ms. Walker engaged in *ex parte* communications with Judge Walker concerning Judge Walker's 'procedure' for disqualifying himself from the Regions Federal Case."  ECF No. 323, at 7–8 (footnotes omitted).  Ms. Kelly goes on to say "[i]t is not known at this time whether any *ex parte* communications, if any, between Ms. Walker and Judge Walker included any advice from Ms. Walker concerning Judge Walker's disqualification in the Regions Federal Case or the Seaside Federal Case." *Id.* n.13.

I most certainly did not discuss either case with my wife.  Moreover, it is not reasonable to infer otherwise from that email.

Lastly, Ms. Kelly cites an October 4, 2013, notice of supplemental authority which Defendant SCDC filed in the *Seaside* federal case in support of its summary-judgment motion.  ECF No. 271.  The supplemental authority is an order issued by the chief district judge presiding over the *Regions* federal case.  The

chief district judge denied Ms. Kelly and Mr. Myers's partial-summary-judgment motion and granted Regions Bank's summary-judgment motion.  The order mentions Ms. Kelly's purchase of Lot 13 in its opening paragraph.  It then describes how Ms. Kelly and Mr. Myers had three mortgage loans from Regions Bank on three other properties.  Nothing in the order suggests that Regions Bank has ever held any interest in Lot 13.[1]

Based on those facts, Plaintiff asserts that I should be disqualified because my wife has "an interest that could be substantially affected by the outcome of the proceeding," 28 U.S.C. § 455(b)(5)(iii), and my impartiality might reasonably questioned under 28 U.S.C § 455(a).

### III

A disqualification motion presents a more sensitive issue than most others that come before a judge.  The parties to a case deserve an impartial judge.  The public should have confidence in the integrity of the judicial process.  The danger of parties abusing the process to get a judge more to their liking is always present.  The hardest part is that the judge must realize that instead of judging others, one is judging his or her own impartiality.  Ruling on that sort of issue requires self-reflection, candor, and humility.  This is, after all, a "government of laws, and not of men." *Marbury v. Madison*, 5 U.S. 137, 163 (1803).

---

[1]  The order is found in the record of the *Regions* federal case at 3:11cv252, ECF No. 172.  It is also found in the record of *Seaside* federal case, 3:10cv392, ECF No. 271-1.

"It has been stated on numerous occasions that when a judge harbors any doubts concerning whether his disqualification is required he should resolve the doubt in favor of disqualification." *Parker v. Connors Steel Co.,* 855 F.2d 1510, 1524 (11th Cir. 1988). Yet disqualification must be "supported by some factual basis." *United States v. Cerceda*, 188 F.3d 1291, 1293 (11th Cir. 1999) (per curiam). It "cannot be based on 'unsupported, irrational or highly tenuous speculation.' " *Id.* (quoting *In re United States*, 666 F.2d 690, 694 (1st Cir.1981)). "Courts should take special care in reviewing recusal claims so as to prevent parties from 'abus[ing] § 455 for a dilatory and litigious purpose based on little or no substantiated basis.' " *Sensley v. Albritton*, 385 F.3d 591, 598 (5th Cir. 2004) (quoting *Travelers Ins. Co. v. Liljeberg Enterprises, Inc.,* 38 F.3d 1404, 1409 n.8 (5th Cir.1994)).

## A

A motion to disqualify a judge under § 455(a) or (b) must be timely made. *Summers v. Singletary*, 119 F.3d 917, 921 (11th Cir. 1997); *United States v. Slay*, 714 F.2d 1093, 1094 (11th Cir. 1983) (per curiam). This is so because those rules are not meant "to allow counsel to make a game of the federal judiciary's ethical obligations." *Delesdernier v. Porterie*, 666 F.2d 116, 121 (5th Cir. 1982). Indeed, the "reason most often given for applying a timeliness requirement to recusal motions is that '[t]he judicial process can hardly tolerate the practice of a litigant

with knowledge of circumstances suggesting possible bias or prejudice holding back, while calling upon the court for hopefully favorable rulings, and then seeking recusal when they are not forthcoming.' " *In re Kensington Int'l Ltd.*, 368 F.3d 289, 312 (3d Cir. 2004) (quoting *Smith v. Danyo*, 585 F.2d 83, 86 (3d Cir.1978)). In other words, a party "may not lie in wait, raising the recusal issue only after learning the court's ruling on the merits." *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1472 (11th Cir. 1986).  The rule is that a motion to disqualify "must be filed within a reasonable time after the grounds for the motion are ascertained." *Summers*, 119 F.3d at 921.  If the facts are known, waiting until after an adverse decision is "too late."  *Id.*

Plaintiff's motion for disqualification is untimely.  Almost every fact that she asserts in support of her motion was known to her when this case was assigned to me more than two years and a half years ago.  The notice of supplemental authority came later, but Plaintiff said nothing about it.  Most importantly, Plaintiff did not seek disqualification until after this Court ruled against her.

Plaintiff asserts that the issue is not waived because "there was no disclosure on the record."  ECF No. 323, at 13.  That is plainly wrong.  The facts Plaintiff identifies were known to her more than two years ago.  Most of those asserted grounds are in the records of the cases.  The only things that were not in the record were the emails between the lawyers.  Plaintiff knew of these.  I did not.  Nor

could I know of them.  Thus, there was nothing for me to disclose.  Plaintiff did

not bring them to this Court's attention.  If there was a failure to disclose, it was

Plaintiff that failed to disclose.

> The Eleventh Circuit has squarely rejected the identical tactic:

> In other words, [the plaintiff's attorney] made a carefully thought out, coldly calculated, eyes open decision not to raise the issue and instead to gamble on winning anyway. The recusal provision was intended to be a shield, not a sword. An issue involving recusal cannot be used as an insurance policy to be cashed in if a party's assessment of his litigation risks turns out to be off and a loss occurs. Plaintiffs waived the issue.

*Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc.*, 140 F.3d 898,

913 (11th Cir. 1998).

Plaintiff's motion comes at least two years too late.  I conclude that it is

untimely and Plaintiff has waived the issue of disqualification.

## B

Even if the disqualification motion were timely, it is wholly without merit.

This is not a close call.

Among other reasons, a judge must disqualify himself whenever the judge's

spouse "[i]s known by the judge to have an interest that could be substantially

affected by the outcome of the proceeding."  28 U.S.C. § 455(b)(5)(iii).  In

*Potashnick v. Port City Const. Co.*, 609 F.2d 1101 (5th Cir. 1980),[2] the court reasoned that "a partner's interest in the outcome of any matter handled by his law firm is substantially greater than that of an associate or an employee."  *Id*. at 1113. The court said the "outcome of any proceeding handled by a law firm may affect the partners' financial interests as well as certain noneconomic interests, including the reputation and goodwill of the firm." *Id*.  The court held that "when a partner in a law firm is related to a judge within the third degree, that partner will *always* be 'known by the judge to have an interest that could be substantially affected by the outcome' of a proceeding involving the partner's law firm." *Id*.  (emphasis added).

It was for this reason that I immediately disqualified myself from the *Regions* federal case; it involved a law firm in which my spouse is a partner.  But I do not know of any interest of my wife that could be substantially affected by the outcome of *this* proceeding.  28 U.S.C. § 455 (b)(5)(iii).  Ms. Kelly has certainly pointed to none.  She says that *Regions Bank* has "a significant financial interest in numerous properties in Seaside."  She has not described that interest.  And she has not said how any ruling by this Court might substantially affect such an interest. Even if she had, the inquiry is not Regions Bank's interest.

---

[2] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

The proper inquiry is the interest of the judge's family member.  My wife's law firm is not "handling" this case.  The fact that Defendants cited portions of the record of *Regions* federal case in the *Seaside* federal case does not make my wife's law firm involved in this case.  In many of the cases *rejecting* a disqualification motion, the judge has a family member working for a law firm that represents a party in unrelated matters, but that law firm is not representing the party in the case before the court.  *See, e.g.*, *In re Medtronic, Inc. Sprint Fidelis Leads Products Liab. Litig.*, 601 F. Supp. 2d 1120 (D. Minn. 2009) (Kyle, J.).  Here, of course, Regions Bank is not a party.  And my wife's law firm is not representing any party.  What Plaintiff asks this Court to do is go one step further and find it is improper for a judge's spouse to belong to a firm that represents another party which is not involved in the litigation and has no identifiable interest in the litigation.

The argument seems to be that Regions Bank might steer its legal business elsewhere because of this Court's rulings.  I agree with Judge Kyle's assessment of this type of argument.  According to Plaintiff, my wife *could* be affected *if* this Court were to rule in a particular way that hurts Regions Bank (though Plaintiff does not say how); *if* Regions Bank then retaliated by withdrawing business from Holland & Knight; *if* the removal of that business impaired my wife's financial interests; and *if* that impairment were substantial.  *See id*. at 1125–26.  The other side of the argument is that my wife *could* be affected *if* this Court were to rule in a

particular way benefiting Regions Bank (again, Plaintiff does not say how); *if* Regions Bank rewarded Holland & Knight by funneling it more business; *if* the additional business enhanced my wife's financial interests; and *if* that enhancement were substantial.  *Id*.  I also agree with Judge Kyle's conclusion that this theory is a "hypothetical house of cards."  *Id*.

Plaintiff says that Regions Bank is an important, long-term client of Holland & Knight.  If that is so "it seems particularly unlikely that *any* ruling the Court might make in this case, whether favorable or unfavorable to [the non-party Regions Bank], would have an impact on the quantum of business the firm receives."  *Id*. at 1125.  Regions Bank is presumed to know that it would be improper for this Court to be influenced by Regions Bank's relationship with Holland & Knight.  *See id*.  It cannot reasonably be expected to think less of a firm because of rulings in this case.  *Id*.  "Simply put, it is not reasonable to accept Plaintiff[']s] argument that the outcome of the proceeding adversely would affect [Holland & Knight's] relationship with [Regions Bank]."  *Id*.

Ms. Kelly has pointed to no authority suggesting that § 455(b)(5)(iii) requires disqualification whenever a judge's spouse's law firm's client who is not a party to a case might somehow be impacted by a ruling.  It is simply "unreasonable and speculative to conclude" that the outcome of this proceeding would

substantially affect my spouse's interests.  *See Microsoft Corp. v. United States*,

530 U.S. 1301, 1302 (2000) (Statement of Rehnquist, C.J.).

I conclude that disqualification is not required by § 455(b)(5)(iii).

C

More broadly, under 28 U.S.C. § 455(a), a judge must "disqualify himself in

any proceeding in which his impartiality might reasonably be questioned."  The

standard is "whether an objective, disinterested, lay observer fully informed of the

facts underlying the grounds on which recusal was sought would entertain a

significant doubt about the judge's impartiality."  *See United States v. Kelly*, 888

F.2d 732, 744–45 (11th Cir. 1989).  The question is how those facts would appear

to a "well-informed, thoughtful and objective observer, rather than the

hypersensitive, cynical, and suspicious person."  *United States v. Jordan,* 49 F.3d

152, 156 (5th Cir. 1995).  Put another way:

> [W]hen considering disqualification, the district court is *not* to use the
> standard of "Caesar's wife," the standard of mere suspicion. That is
> because the disqualification decision must reflect not only the need to
> secure public confidence through proceedings that appear impartial,
> but also the need to prevent parties from too easily obtaining the
> disqualification of a judge, thereby potentially manipulating the
> system for strategic reasons, perhaps to obtain a judge more to their
> liking.

*In re Allied-Signal Inc.*, 891 F.2d 967, 970 (1st Cir. 1989).  Indeed, "[t]he care with

which these rules are drafted should make a court hesitate to treat the general

language of § 455(a) as a bar to judicial service whenever a relative has something

to do with a party." *Matter of Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 839

F.2d 1226, 1229 (7th Cir. 1988). The point applies with even more force when the

relative has *nothing* to do with any party to the case.

By way of example, *Hammer v. Sam's East, Inc.*, 754 F.3d 492 (8th Cir.

2014), addressed a similar set of circumstances. The plaintiffs asserted that two

retail stores violated federal law by printing too many digits of credit card numbers

on receipts. *Id.* at 495. The district judge's son worked as a lawyer in a firm

representing a company that partnered with the retailers to finance credit for the

retailer's customers. *Id.* at 503. The district judge declined to recuse himself. On

appeal, the court held that the "nature of the alleged conflict is simply too remote,

speculative, and contingent to give rise to a situation in which the judge's

impartiality might reasonably be questioned by a member of the public." *Id.* at 504

(internal quotation marks omitted). The court noted that (1) the finance company

was not a party; (2) there was little possibility it would become a party; (3) the

judge's son was in no way involved with the case; and (4) no lawyer in that firm

had ever appeared in the case in any capacity. The court said that the plaintiff's

counsel "seems to be grasping at straws blowing in the wind in order to litigate this

case further." *Id.*

The same is true here. Regions Bank is not a party to this case. There is

little if any possibility of it becoming a party. My wife's firm is not involved in

this case.  Ms. Kelly has not identified any interest of Regions Bank, Holland &

Knight, or my wife that could be affected by the outcome of this case.  *See*

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 857 (1988).  Even if

she had, remote, speculative, and contingent considerations are not grounds for

disqualification.  The Seventh Circuit explained this well:

> Judges regularly sit in cases that could affect their well-being
> tangentially. A judge who owns a house could be affected by a
> decision influencing the rate of interest, a judge who owns stock in the
> coal industry could be affected by a decision in a case concerning
> nuclear power, and so on. These indirect effects do not cause
> informed, reasonable observers to doubt a judge's disinterest.

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 839 F.2d at 1229 (Easterbrook, J.).

For these reasons, I conclude that an objective observer, informed of the

relevant facts, would not find that my participation in this case gives rise to an

appearance of partiality.  Disqualification is not required under 28 U.S.C. § 455(a).

## IV

I conclude that the motion contains no facts or law supporting

disqualification.  Ironically, I will recuse myself because of the false accusations

made by Plaintiff's lawyer.

A federal judge must have a "sticks and stones" approach to things.  And for

good reason; a judge without the stomach for unfounded criticism should not be a

judge.  I expected criticism as a state court judge.  I expect criticism as a federal

judge.  It is part of the job.  I understand, too, that a lawyer's considered decision

to ask a judge to disqualify herself or himself is not an easy one to make.  A lawyer must sometimes ask for that relief.  A judge presented with such a request must not take undue offense.

The issue here, though, is the ungentlemanly, unprofessional, and completely unfounded attacks on my wife's character.  I refer to two assertions in the motion.  It says "it may be reasonably inferred . . . that Ms. Walker engaged in *ex parte* communications with Judge Walker concerning Judge Walker's 'procedure' for disqualifying himself from the Regions Federal Case."  ECF No. 323, at 7–8 (footnotes omitted).  It goes on to say "[i]t is not known at this time whether any *ex parte* communications, if any, between Ms. Walker and Judge Walker included any advice from Ms. Walker concerning Judge Walker's disqualification in the Regions Federal Case or the Seaside Federal Case."  *Id*. n.13.

Again, I expressly reject those assertions as completely false.  There was no ex parte communication.  It is not reasonable to infer that there was from that email.  Counsel for plaintiff falsely suggested that my wife lobbied me on behalf of a client in violation of numerous rules of professional conduct for lucre or malice.  That counsel included some language of qualification fools no one; the intent was to smear without cause.  To be sure, Plaintiff's lawyer presented no factual basis

for such an assertion.  Obviously, this is a not-so-clever ploy to re-litigate unfavorable rulings rather than properly appeal them to the Eleventh Circuit.

When I was a practicing lawyer, I would not lightly imply that a fellow lawyer or a judge had behaved unethically.  A useful guide is the Preamble to the Rule Regulating the Florida Bar:  "A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and those who serve it, including . . . other lawyers."  A lawyer upholds those principles by, for example, complying with Federal Rule of Civil Procedure 11(b) and not presenting a motion "for any improper purpose" or making factual contentions without evidentiary support.  Plaintiff's lawyer that signed the disqualification motion should take note of his duties under Rule 11.  *See, e.g.*, *Drake v. Birmingham Bd of Educ.*, 476 F. Supp. 2d 1341, 1348 (N.D. Ala. 2007).

I am a relatively new federal judge.  I did not expect baseless attacks such as these to be leveled by a member of the bar of this Court.  Frankly, I was offended.  Under the rules of professional conduct, a lawyer should not make such baseless attacks.  Where I come from, a gentleman would not.

The passage of time brings perspective.  But I am concerned about my ability to completely set aside my initial reaction to this motion.  A good judge

should engage in self-reflection in determining whether to remain on a case.  And, I strive to be a good judge.

A good example is found in *United States v. Meyerson*, 677 F. Supp. 1309 (S.D.N.Y. 1988).  The district judge found there was no basis for disqualification. Yet he chose to recuse himself for these reasons:

> The people of the United States and the defendants are entitled to as fair a trial as any judge in the district can give them. I resent the unsupported assertions of the United States Attorney and his tactics in attempting to disqualify me. They apparently arise from a belief that my understanding of the law and the proper conduct of an attorney for the government would hamper the way he wants to prosecute this case. I doubt that I can any longer maintain that impartiality and the appearance of impartiality which are necessary to the proper administration of justice. I am pleased that in this district I can thus indulge myself, because there are so many other judges who are eminently qualified to rule upon the motions and preside at any trial of this case.

*Id*. at 1315.

Perhaps if the false accusations were aimed solely at me, it would be different.  But they were aimed at my wife as well.  I love my wife.  I admire her industry, judgment, and integrity.  I have known no finer person.  I deeply resent the unprofessional attack on her character.  It would be disingenuous for me to say otherwise.

In all likelihood, I could and would fairly resolve whatever issues needed to be resolved to conclude this case.  But close questions should be resolved in favor of recusal.  In the end, I think it is best to let another judge take over this case.

I am troubled to reward Plaintiff for this behavior.  However, I am relieved of those concerns by confidence in my colleagues on this Court to preside over the remainder of this case, and judge it fairly and wisely.

For these reasons,

**IT IS ORDERED**:

1.  Plaintiff's motion, ECF No. 323, is **DENIED**.

2.  However, for other reasons articulated here, I recuse myself from further participation in this case.

**SO ORDERED on August 24, 2015.**

<u>**s/Mark E. Walker**</u>
**United States District Judge**